UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

ENVTECH, INC.,

Plaintiff,

v.

PETROCHEM FIELD SERVICES, INC.,

Defendant.

Case No. 3:17-cv-00078-MMD-WGC

ORDER

## I. SUMMARY

This case concerns a contract dispute between a manufacturer of cleaning supplies for oil refineries and a refinery services company. Before the Court is Defendant Petrochem Field Services, Inc.'s ("Petrochem") Motion to Dismiss for Lack of Personal Jurisdiction ("Motion"). (ECF No. 7.) The Court has reviewed Plaintiff EnvTech, Inc.'s ("EnvTech") response (ECF No. 11) and Petrochem's reply (ECF No. 16). For the reasons discussed below, Petrochem's Motion to Dismiss is granted.

## II. BACKGROUND

EnvTech initially filed its complaint in the Second Judicial District Court of Washoe County on December 22, 2016. (ECF No. 1-1.) Petrochem then removed the case to this Court on February 6, 2017, on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a). (ECF No. 1.) The following facts are taken from the complaint (ECF No. 1-1).

EnvTech is a Nevada-based company that produces and sells chemicals used to clean oil and gas refineries. Petrochem is a Texas-based company that installs, modifies, and cleans towers and vessels at refineries. Petrochem began purchasing chemicals from

EnvTech in 2010 and continued to do so until 2014. During that period, Petrochem would contact EnvTech in Nevada in order to create a purchase order. EnvTech would then invoice Petrochem and, most often,[1] deliver the chemicals. Generally, Petrochem would pay approximately half of the cost of the chemicals up front. Shortly after delivery, Petrochem would then pay EnvTech the remaining amount.

Around April of 2014, Petrochem ordered $575,900 worth of chemicals. The purchase order was officially placed on May 7, 2014, and specified that payment was due within "net 30 days." Petrochem made a partial payment of $287,980. In early July 2014, before paying off the outstanding balance, Petrochem placed an additional order for $248,980 worth of chemicals. The order was memorialized in an email from Paul Stanco at EnvTech to several employees at Petrochem on July 14, 2014, and an invoice was created on that date for the order. Shortly thereafter, EnvTech shipped the chemicals out of Nevada to Petrochem. Petrochem did not object to the chemicals it received for the May 7, 2014, invoice or the July 14, 2014, invoice.

Despite accepting these orders, Petrochem never paid EnvTech the outstanding balances of $287,920 (May 7, 2014, order) or $248,980 (July 14, 2014, order). EnvTech is now suing Petrochem in order to recover the outstanding amounts owed and any accompanying damages.

The complaint asserts three claims for relief: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) unjust enrichment. (ECF No. 1-1 at 4-5.)

## III. LEGAL STANDARD

In opposing a defendant's motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing that jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where, as here, the defendant's motions are based on written materials rather than an evidentiary hearing, "the plaintiff need only make 'a

---

[1] According to EnvTech, Petrochem had the chemicals picked up for the fourth transaction in April of 2012. (ECF No. 11 at 6.)

prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010) (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)). The plaintiff cannot "simply rest on the bare allegations of its complaint," but uncontroverted allegations in the complaint must be taken as true. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)). The court "may not assume the truth of allegations in a pleading which are contradicted by affidavit," *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977), but it may resolve factual disputes in the plaintiff's favor. *Pebble Beach Co.*, 453 F.3d at 1154.

## IV. DISCUSSION

A two-part analysis governs whether a court retains personal jurisdiction over a nonresident defendant. "First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute." *Chan v. Soc'y Expeditions*, 39 F.3d 1398, 1404 (9th Cir. 1994). Since "Nevada's long-arm statute, NRS [§] 14.065, reaches the limits of due process set by the United States Constitution," the Court moves on to the second part of the analysis. *See Baker v. Eighth Judicial Dist. Court ex rel. Cnty. of Clark*, 999 P.2d 1020, 1023 (Nev. 2000). "Second, the exercise of jurisdiction must comport with federal due process." *Chan*, 39 F.3d at 1404-05. "Due process requires that nonresident defendants have certain minimum contacts with the forum state so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Id.* at 1405 (citing *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)). Courts analyze this constitutional question with reference to two forms of jurisdiction: general and specific jurisdiction.

EnvTech argues that this Court has specific jurisdiction[2] over Petrochem because Petrochem purposefully consummated transactions with Nevada, thereby having several

---

[2] EnvTech's response focuses solely on specific jurisdiction thereby conceding that there is no general jurisdiction over Petrochem in the state of Nevada.

3

contacts with the state, and EnvTech's breach-of-contract claims arise directly from these transactions. (ECF No. 11 at 10-17.) The Court disagrees.

Specific jurisdiction exists where "[a] nonresident defendant's discrete, isolated contacts with the forum support jurisdiction on a cause of action arising directly out of its forum contacts." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1075 (9th Cir. 2011). Courts use a three-prong test to determine whether specific jurisdiction exists over a particular cause of action: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable." *Id.* at 1076 (quoting *Schwarzenegger*, 374 F.3d at 802). The party asserting jurisdiction bears the burden of satisfying the first two prongs. *Id.* (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). If it does so, the burden shifts to the party challenging jurisdiction to set forth a "compelling case" that the exercise of jurisdiction would be unreasonable. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)). The plaintiff bears the burden of showing that jurisdiction is proper by a preponderance of the evidence. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 839 (9th Cir. 1986) (internal citations omitted).

EnvTech fails to meet the first prong of the specific jurisdiction analysis. In particular, EnvTech has not shown that Petrochem purposefully availed itself of the benefits and protections of Nevada's laws with regard to the two transactions at issue in this action.

"In a breach of contract action, the purposeful availment requirement is satisfied if the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents." *CE Distribution, LLC V. New Sensor Corp.*, 380 F.3d 1107, 1113 (9th Cir. 2004) (quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th

4

Cir. 1995)) (internal quotation marks omitted). By itself, entering into a contract with a resident of the forum state is insufficient to subject a nonresident defendant to personal jurisdiction. *Picot v. Weston*, 780 F.3d 1206, 1212-13 (9th Cir. 2015). However, "if the defendant directly solicits business in the forum state, the resulting transactions will *probably* constitute the deliberate transaction of business invoking the benefits of the forum state's laws." *Decker Coal Co.*, 805 F.2d at 840 (emphasis added). The "practice of mailing or making payment in the forum state does not weigh heavily in the calculus of contacts." *Hupe v. Mani*, No. 2:16-cv-00533-GMN-VCF, 2016 WL 3690093, at *3 (D. Nev. July 12, 2016) (internal quotation marks and citation omitted). In determining whether a party purposefully availed itself of the benefits and protections of the forum state, the court may consider prior negotiations, contemplated future consequences, the terms of the contract, and the parties actual course of dealing. *Burger King*, 471 U.S. at 479.

EnvTech relies heavily on the prior transactions that occurred between the two companies to argue that Petrochem purposefully availed itself of the privilege of doing business with a Nevada corporation and, therefore, with the state of Nevada. These prior transactions consist of five stand-alone purchases. These transactions were not part of an ongoing contractual relationship between the two parties that required Petrochem to continue to buy chemicals from EnvTech.[3] (*See* ECF No. 11 at 5-7.) Generally, when transacting, Petrochem would submit a purchase order to EnvTech by email and EnvTech would then email back an invoice.[4] (*See* ECF No. 11-1 at 2-5.) Petrochem's payments to EnvTech were then made by way of wire transfer to EnvTech's Nevada-based bank account. On one occasion, Petrochem sent an employee to Nevada to supervise the

---

[3]The fifth transaction occurred after the two parties entered into an exclusivity agreement. However, the agreement was terminated within a few months of being entered into because Petrochem returned the chemicals obtained during the fifth transaction and did not compensate EnvTech for the cost of shipping and picking them up in Texas. (ECF No. 11 at 6.)

[4]In its reply, Petrochem disputes whether it initiated the transaction with EnvTech. (ECF No. 16 at 5.) However, even if Petrochem initiated the two transactions at issue in this case, this fact is irrelevant as each transaction was considered a stand-alone transaction, and EnvTech does not claim that there was an ongoing business relationship between the two that would create continuing obligations.

5

shipment of an order. (*See id.* at 2-3.) In addition, on two occasions Petrochem and EnvTech entered into an exclusivity agreement, but the agreements were both cancelled by the time of the next transaction. (*See id.* at 4-5; *see also* ECF No. 11 at 6-7.) None of these facts establish that Petrochem availed itself of the protections and benefits of Nevada's laws when making the two transactions at issue in this action, or that performance of the transactions by Petrochem required them to engage in any substantial business in Nevada. *See Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008). The two transactions at issue required only that Petrochem pay EnvTech for the chemicals and cost of shipment upon delivery of the items in Texas.

Cumulatively, the facts presented by EnvTech establish only the existence of a prior business relationship between the two companies. The two transactions at issue in this action were established through phone calls and emails, and the chemicals were delivered to Texas, which is insufficient to render personal jurisdiction over Petrochem. EnvTech has presented no evidence that these transactions or the exclusivity agreement[5] that existed around the time of the final transaction were governed by Nevada law or required Petrochem to perform substantial business in the state of Nevada. In addition, all the transactions appear to have been treated as out-of-state sales[6] (*see*, *e.g.*, ECF No. 11-1 at 10, 12, 24, 43, 48, 60, 72), which further supports the fact that Nevada's laws did not govern the two transactions at issue in this dispute.

///

---

[5]The existence of an exclusivity agreement may lend support to a finding of specific personal jurisdiction, but the breach of contract claims at issue in this action do not arise from breach of either the January 2013 agreement or the July 2014 agreement. (*See* ECF No. 11 at 6-7.)

[6]the two transactions at issue involved purchase orders specifying "F.O.B.", which EnvTech does not dispute. (ECF No. 16 at 6.) In an F.O.B. contract, "[t]he seller's delivery is complete (and the risk of loss passes to the buyer) when the goods pass into the transporter's possession." Free on Board, Black's Law Dictionary (10th ed. 2014). The Ninth Circuit has not determined whether F.O.B. shipments are sufficient to establish minimum contacts in the forum state. *See Aurora Corp. of America v. Michlin Prosperity Co., Ltd.*, No. CV 13-03516 RSWL (JCx), 2015 WL 5768340, at \*6 (C.D. Cal. Sept. 29, 2015). While other factors must be present, F.O.B. shipments lend support to the destination state being the proper forum for disputes arising from those transactions. *See id.*

EnvTech has failed to meet its prima facie burden of establishing that jurisdiction in the state of Nevada is proper. Therefore, the Court may not exercise specific jurisdiction over Petrochem.

**V.     CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of Petrochem's Motion.

It is therefore ordered that Petrochem's Motion to Dismiss (ECF No. 7) is granted. Claims against Petrochem are dismissed for lack of jurisdiction.

The Clerk is directed to close this case.

DATED THIS 1st day of August 2017.

---
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE